EDWIN C. WHITNEY *vs.* WILLIAM W. HUNTINGTON.

July 8, 1887.

| 37 | 197 |
| 40 | 308 |
| 37 | 197 |
| 41 | 550 |
| 37 | 197 |
| 62 | 108 |
| 37 | 197 |
| 68 | 270 |
| 37 | 197 |
| 83 | 503 |
| 32 LRA | 200 |

**Mortgage—Foreclosure by Action—Judgment Creditor not made a Party.**—Three judgment creditors, A., B., and C., and a mortgagee, D., acquired their respective liens upon the same property in the order named. In an action to foreclose D.'s mortgage, A. and B. were made parties defendant, but C. was not made a party. The judgment of foreclosure directed the sale of the premises to satisfy the liens of A., B., and D., in the order named, which was executed. C., enforcing his judgment, purchased the premises upon a sale under his execution. *Held,* that C., not being a party to the foreclosure action, and hence not being affected by the judgment therein, acquired a title under his execution sale superior to that of the purchaser under the foreclosure sale, notwithstanding the fact that the latter sale was, by the terms of the decree, made in part to satisfy the paramount judgments of A. and B.

**Conversion—Timber Cut by Trespasser—Good Faith—Damages.**—In an action for the conversion of logs which had been cut by a trespasser upon the plaintiff's land, the measure of damages is the value of the standing timber, and not the greatly increased value of the logs, if the

trespasser honestly and reasonably believed that his conduct was right-
ful, he not having been culpably negligent or regardless of the rights of
others.

**Same—Notice of Adverse Claim.**—Actual notice of the adverse claim of
the true owner is not inconsistent with good faith on the part of the tres-
passer.

**Same—Finding.**—A finding that such a trespass was committed in good
faith, although with notice of the adverse claim of the true owner, sus-
tained.

Plaintiff brought this action in the district court for Hennepin
county, to recover for the alleged conversion by defendant of logs
and timber wrongfully cut and removed from land alleged to belong
to the plaintiff. The answer denied plaintiff's ownership of the land
or of the logs and timber. At the trial, before *Lochren, J.,* and a
jury, special findings were taken upon issues as to the amount of the
logs and timber cut and the value thereof, both at the time they were
cut upon the land and at the time they were converted; and, by agree-
ment, the other issues were tried by the court. Upon the special
findings of the jury and the facts found by the court, judgment was
directed for plaintiff for the value of the logs and timber upon the
land at the time they were cut as found by the jury. Both plaintiff
and defendant appeal from an order refusing a new trial. A former
appeal is reported in 34 Minn. 458.

*Atwater & Hill* and *P. M. Babcock,* for plaintiff.

*Shaw, Best & Cray,* for defendant.

DICKINSON, J.[1] This is an action to recover the value of a large
quantity of logs, which were cut by Griffin and Beard upon vacant
and unimproved lands in Morrison county, to which land this plain-
tiff asserts title. The defendant's appeal presents the question
whether the plaintiff, Whitney, or Griffin, (from whom the defendant,
by purchase, claims title to the logs,) owned the land.

The facts respecting the title may, for the purposes of this decis-
ion, be thus briefly stated: Clark, the owner of the land, executed
a deed of conveyance, absolute in form, to Baldwin, in 1869, which

---

[1] Berry, J., because of illness, took no part in the decision of this case.

was recorded in March, 1877. This was in fact given to secure an indebtedness of Clark to a bank of which Baldwin was the cashier. In February, 1877, judgments for the recovery of money against Clark, and in favor of Hayward and Phaneuf, respectively, were docketed in Morrison county. In April, 1875, Clark executed a mortgage upon these lands to Pinney, which was recorded in November, 1877. In February, 1878, Armstrong recovered a judgment for money against Baldwin, which was assigned to this plaintiff, and in February, 1882, the judgment was docketed in Morrison county. This plaintiff then had no knowledge as to the title of this land, except such as the record disclosed. Under execution issued upon that judgment, the land in question was sold in April, 1883, this plaintiff being the purchaser, for the sum of $3,099.75, and the sheriff's certificate of sale was then recorded. In July, 1882, an action was commenced by the administrator of Pinney's estate to foreclose the mortgage given by Clark to Pinney. Clark, Baldwin, Hayward, Phaneuf, and the bank were made parties defendant, but the judgment creditors of Baldwin were not parties to the action. In that action judgment was rendered in March, 1883, adjudging the title to be in Clark, and that the land should be sold to satisfy the incumbrances in the following order: (1) The Hayward judgment; (2) the Phaneuf judgment; (3) the debt which the deed was given to Baldwin to secure; and, lastly, the Pinney mortgage. This judgment of foreclosure was executed by a sale of the property to Griffin, in July, 1883, and in December following Clark quitclaimed to him.

It is not denied that, as between the Pinney mortgage from Clark, through the foreclosure of which the defendant asserts the title to have been acquired by Griffin, and the Armstrong judgment against Baldwin, through which the plaintiff claims title, the latter was the superior lien under the operation of the registry law; but it is claimed by the defendant that Griffin, the purchaser at the foreclosure sale, acquired through these foreclosure proceedings a title under the Hayward and Phaneuf judgments superior to that acquired by the plaintiff under the later Armstrong judgment.

This claim cannot be sustained. The purchaser at the foreclosure sale acquired no title under those judgments as against this plaintiff,

who was not a party to the action. The plaintiff's junior judgment lien would, of course, have been extinguished if the land had been sold under *executions* issued upon those senior judgments. The notice of sale under the decree was perhaps published for the same time as it would have been for an execution sale, and the sale conducted in the same way; but there is a distinction in respect to the authority for making the sale; in the one case, an execution, in the other, a judgment in an action to foreclose a mortgage lien subordinate to the lien of this plaintiff. An execution might be issued, as authorized by law, to enforce the prior judgments, without this plaintiff having been ever in any manner brought into court, and his rights would be affected by such a sale. But while the judgment in the foreclosure action directed a sale of so much of the premises as might be necessary to satisfy the prior specified liens, as well as the mortgage, that judgment was effectual only as to those who had been made parties to the action. It involved no adjudication of this plaintiff's rights, nor did its execution serve to subordinate his superior lien to the inferior lien of the mortgagee, nor deprive him of the right to redeem from the prior judgments of Hayward and Phaneuf. This disposes of the defendant's appeal.

The plaintiff, being the owner of the land from which the logs were cut, was entitled to recover. He appeals for the reason that he was allowed only the value of the standing timber. He claims the right to recover the value of the *logs* at the time he demanded possession from the defendant. This was more than twice the value of the timber standing upon the land. The logs had been cut by Griffin between November 1, 1883, and April 1, 1884, after his purchase under the foreclosure sale, and had been driven to Rice lake, on the Platte river, where they were sold and delivered to the defendant. Here, in February, 1885, the plaintiff demanded the delivery of the logs to him, which was refused. This action was then commenced to recover their value. The court found that Griffin cut the timber, and drove the logs to Rice lake, believing in good faith that he was the owner of the land, and that he had good right to cut and remove the timber, and that the plaintiff's claim to the land and timber was invalid. But it is also found that, at and prior to the purchase of

the land by Griffin, in July, 1883, he was informed of the purchase of the same land by the plaintiff, at the execution sale in 1883; and again before December, 1883, the plaintiff informed Griffin that he claimed title to the land by that purchase, and should claim any logs that might be cut upon the land. It is further found that when the defendant purchased and paid for the property, he had no knowledge or notice of any adverse claim thereto.

In *Hinman* v. *Heyderstadt*, 32 Minn. 250, (20 N. W. Rep. 155,) a modification of the general rule, as expressed in *Nesbitt* v. *St. Paul Lumber Co.*, 21 Minn. 491, was recognized where the trespass was not an intentional wrong, but was the result of inadvertence or mistake. In that case hay had been cut by the defendants, as the case shows, in good faith, and in the belief that they owned the land. Upon that ground the recovery was limited to the value of the standing grass. It is now only necessary for us to consider whether this case is within the principle of that last cited. We should first determine what is that quality of good faith in the trespasser which thus affects the measure of damages. We think that no more is necessary than that the trespasser, without culpable negligence, or a wilful disregard of the rights of others, shall have acted in the honest and reasonable belief that his conduct was rightful. Notice of an adverse claim would be an important element to be considered; but that alone would not necessarily place the wrong-doer in the position of a culpably wilful trespasser. The term "good faith" has been employed in the authorities upon this subject to characterize the acts of one who, while legally a wrong-doer, yet acted in the honest belief that his conduct was rightful. But the reasons which have given to that term a meaning involving the element of want of notice, when used with respect to purchasers under registry laws, and in some other circumstances, are not applicable here.

In the recent case of *Jegon* v. *Vivian*, L. R. 6 Ch. App. 742, 760, trespassers taking coals from a mine were deemed to have acted *bona fide*, so as to make them liable for only the smaller measure of damages chargeable in such cases, although they had actual notice of the adverse claim of the true owner, and although their right was in litigation.

Adopting the view of the law above stated, we are of the opinion that the finding of the court as to the good faith of Griffin should be sustained. It appears from the sheriff's certificate of the sale under the judgment in the foreclosure action, that Griffin purchased the property for nearly $22,000, and we think that the certificate is *prima facie* evidence of that fact. He also procured from Clark, the mortgagor, a conveyance which extinguished his right of redemption. The other lienholders, who were parties to the action, were paid from the proceeds of the sale to Griffin. The title was in a confused state. The fact, as suggested by the learned judge whose decision is under review, that in this action a judgment was directed in favor of this defendant by a learned judge of the district court, (*Whitney* v. *Huntington*, 34 Minn. 458; 26 N. W. Rep. 631,) upon the pleadings, the complaint alleging facts which would place the defendant in no better position than Griffin occupied, shows that Griffin may well have entertained the honest belief that he had a right to do what he did do. He asserted to the plaintiff his claim of title, and by negotiation attempted, as the evidence tends to show, to effect an agreement for the payment of the value of the "stumpage"—the value of the timber—to the plaintiff, if the title should be found to be in him; and a proposition of that nature was rejected by the plaintiff.

The court, subsequent to the trial, and when the cause came on for argument, received in evidence the deed from Clark to Griffin, of December, 1883. This was within the proper discretion of the court. It had no bearing upon the special issues previously submitted to the jury. If this had rendered necessary further evidence from the adverse party, doubtless opportunity would have been given to produce it.

Order affirmed.