HARRIET F. KING *vs*. ORLANDO C. MERRIMAN and others.

December 23, 1887.

Written Contract—Construction — Grant of Right to Cut Timber.—
A grant of the "right, privilege, and permission to enter and cut, during
the logging seasons of 1883–1884 and 1884–85, all the pine timber fit for
saw-logs growing upon" certain land, *held* to be a contract for the sale
only of so much timber as the grantees should cut during these two log-
ging seasons.

Same—Parol Evidence of Surrounding Circumstances. — Evidence of
the "surrounding circumstances" under which a written contract was
executed is not admissible to prove the unexpressed intention of the par-
ties, or their prior verbal negotiations. Its use is limited to throw light
on the real meaning of that which is written, in case of ambiguity arising
upon the face of the instrument.

Trespass—Cutting Timber— Good Faith— Measure of Damages.—In
an action for the value of timber cut and carried away from the land of
another, if the defendant was an unintentional or mistaken trespasser, or
honestly and reasonably believed that his conduct was rightful, the meas-
ure of damages is the value of the timber at the time it was taken; that is,
standing on the ground.

Same—Notice of Adverse Claim.—Actual notice of the adverse claim of
the rightful owner is not necessarily inconsistent with such honesty of
intention or purpose; following *Whitney* v. *Huntington*, 37 Minn. 197.

Plaintiff brought this action in the district court for Hennepin
county, to recover the value of pine timber alleged to have been
wrongfully cut and removed by defendants from plaintiff's land, and
converted to their own use. The defendants, in their answer, ad-
mitted the cutting and removal, but justified it under a contract made
by plaintiff with Leighton & Fenwick, and by them assigned to the
defendants. Upon the trial, before *Rea*, J., and a jury, the contract
was held inadmissible, the timber in question having been cut after
the logging season of 1884–85. A verdict was directed for the plain-
tiff for $22,042, being the value of the timber at the date of de-
mand therefor, when it was in the Anoka boom in the Mississippi
river. Plaintiff appeals from an order granting a new trial. In a
memorandum accompanying this order, the court below stated that

it was of opinion that its interpretation of the contract upon the trial was erroneous.

The contract relied on by defendants, and considered in the opinion, is partly printed and partly written with a pen, and is as follows : (The portion which is included in brackets is printed matter erased by the drawing of a pen through it, and that portion which is in italics is matter written with a pen; the remaining portion being printed)

"Articles of agreement made and entered into this *first* of *November* A. D. 188*3* by and between [Weston Merritt] *Harriet F. King*, of Minneapolis, Hennepin county, Minnesota, party of the first part, and *Herman Leighton and William Fenwick*, of *Minneapolis, Hennepin county, Minn.*, parti*es* of the second part, witnesseth:

"That the said party of the first part, for and in consideration of the promises, stipulations, and agreements hereinafter contained to be performed on the part of the said parti*es* of the second part, do hereby grant unto the said parti*es* of the second part, *their* executors, administrators, and assigns, the right, privilege, and permission to enter and cut, during the logging seasons of *1883–4 and 1884–5*, all the pine timber fit for saw-logs growing upon the following described lands situated in the county of *Morrison* in the state of Minnesota, to wit: *The South West quarter (S. W. ¼) of Section Thirty-five (35) in Township Forty-one (41) Range Twenty-eight (28)*.

"And the said parti*es* of the second part, in consideration of the grant, privilege, and permit aforesaid, do hereby promise and agree for *themselves*, *their* executors, administrators, and assigns, that *they* will enter upon said lands, as soon as the regular logging season aforesaid shall commence, with a sufficient number of men and teams to enable *them* to cut and haul all the timber upon said land suitable for saw-logs [and that will make two logs of not less than twelve feet to the tree, — inches in diameter at the top; and] that *they* will cut the same clean acre by acre as *they* go, without waste, and with as little damage as practicable to the young timber; that *they* will bank and land said logs separately from all others; in such manner as to afford all reasonable facilities for scaling and driving the same; that *they* will mark the same in a plain and substantial manner, with the following log-mark to wit, L.∴F (*L three scalps F*) which said mark

shall be properly recorded in the office of the surveyor-general of logs and lumber of the second district, in the name of said party of the first part; that [from] *for* the logs so to be cut as aforesaid [and out of the first of said logs of an average quality that shall be driven into Anoka boom] *they will pay or cause to be paid to the party of the first part, as stumpage on said logs, the aggregate sum of seven thousand, seven hundred and fifty dollars, as hereinafter specified.*

"Provided, however, and it is hereby expressly understood and agreed by and between the parties hereto, that until the terms of this contract shall have been fully complied with and performed on the part of the said part*ies* of the second part, all the logs which may be so cut as aforesaid, shall remain the property of the said party of the first part.

"And it is further mutually agreed that in case the said part*ies* of the second part shall fail to comply with the terms of this agreement, and the said party of the first part, *or her agent*, shall have the right, and is hereby fully empowered, at [his] *her or her agent's* option, at any time to enter upon and take possession of said logs, as well as any lumber manufactured therefrom, wheresoever the same may be, and to sell the same upon such terms as to [him or his] *her or her* agent may seem best, and from the proceeds of said sale to retain and keep as stumpage $*7,750.00* [per thousand feet board measurement] for all the logs which shall have been cut under this contract, together with all the costs and expenses of taking possession of, keeping, and selling said logs and lumber, or either, with a reasonable compensation for the time and trouble of [himself or his] *herself or her* agent in attending thereto, paying the balance, if any, to said part*ies* of the second part; that all logs cut upon said lands, or banked or landed with them, as well as any lumber made therefrom, shall be scaled by *the surveyor general of the second district of Minnesota, or such other party as may be mutually agreed upon by the parties hereto,* and the scale-bill rendered by him shall be final and conclusive between the parties hereto; provided, that, if from any cause said party of the first part shall see fit to have a rescale [by said]
she shall have the right to cause the same to be made, and the expenses of scaling said logs shall be equally borne by said

parties of the first and second part; except that said ·parties of the second part shall, at *their* own proper cost, board the said scaler and his assistants while engaged in making said scale or survey.

"That in case of any dispute or disagreement between said parties in regard to cutting [clean or without proper economy or] without waste or damage to the growing timber, or any or either, the matter of disagreement shall be referred to the said *surveyor general or such other person as may be mutually agreed upon*, whose decision in writing, delivered to the said parties respectively, or their agents, shall be final and conclusive between the parties, and shall be a bar to any further adjudication upon such question or questions.

"*The stumpage provided for in this contract shall be paid as follows: Three thousand dollars in cash, upon the execution and delivery of this contract, receipt whereof is hereby acknowledged by the party of the first part, and the remainder, four thousand seven hundred and fifty dollars, ($4,750.00,) shall be paid on or before June 15, 1884, it being understood and agreed that said first party will at that date accept satisfactory notes, running not to exceed ninety days, and bearing interest at the rate of seven (7) per cent. per annum, for said last payment of $4,750.00, but failing to deliver such notes at the time of final payment as above, said second party shall make said payment in cash, on or before June 15, 1884, as above.*

"In testimony whereof the said parties of the first and second parts have hereunto set their hands in duplicate, the day and year above written.                                    "HARRIET F. KING,
                                                "HERMAN LEIGHTON,
                                                "WILLIAM FENWICK."


*Hart & Brewer* and *Atwater & Hill,* for appellant, upon the point that the defendants' right to cut and remove timber ceased after the logging season of 1884–85, cited *Pease* v. *Gibson,* 6 Greenl. (Me.) 81 ; *Howard* v. *Lincoln,* 13 Me. 122; *Putney* v. *Day,* 6 N. H. 430, (25 Am. Dec. 470;) *Plumer* v. *Prescott,* 43 N. H. 277; *Hoit* v. *Stratton Mills,* 54 N. H. 109; *Judevine* v. *Goodrich,* 35 Vt. 19; *Strong* v. *Eddy,* 40 Vt. 547 ; *Kemble* v. *Dresser,* 1 Met. 271, (35 Am. Dec. 364;) *Reed* v. *Merrifield,* 10 Met. 155; *Hill* v. *Hill,* 113 Mass. 103; *Perkins* v. *Stockwell,* 131

Mass. 529; *McIntyre* v. *Barnard,* 1 Sand. Ch. 52; *Boisaubin* v. *Reed,* 2 Keyes, 323; *Kellam* v. *McKinstry,* 69 N. Y. 264; *Saltonstall* v. *Little,* 90 Pa. St. 422; *Boults* v. *Mitchell,* 15 Pa. St. 371; *Sanders* v. *Clark,* 22 Iowa, 275; *Green* v. *Bennett,* 23 Mich. 464; *Monroe* v. *Bowen,* 26 Mich. 523; *Richards* v. *Tozer,* 27 Mich. 451; *Johnson* v. *Moore,* 28 Mich. 3; *Haskell* v. *Ayres,* 32 Mich. 93; *Utley* v. *Wilcox Lumber Co.,* 59 Mich. 263, (26 N. W. Rep. 488;) *Williams* v. *Flood,* (Mich.) 30 N. W. Rep. 93; *Rich* v. *Zeilsdorff,* 22 Wis. 519; Tiedeman, Real Prop. § 843; 3 Washburn, Real Prop. 646.

*C. H. Benton* and *Benton & Roberts,* for respondents, cited, *contra, Scheffer* v. *Tozier,* 25 Minn. 478, 480; *McIntyre* v. *Barnard,* 1 Sandf. Ch. 52; 1 Benj. Sales, 330; *Leonard* v. *Davis,* 1 Black, 476, 483; *Bigler* v. *Hall,* 54 N. Y. 167; *Farnham* v. *Thompson,* 34 Minn. 330, (26 N. W. Rep. 9;) 2 Pars. Cont. 527; *Emerson* v. *Fisk,* 6 Greenl. 200, 205, (19 Am. Dec. 206;) *Hoit* v. *Stratton Mills,* 54 N. H. 109; *Heflin* v. *Bingham,* 56 Ala. 566; *Boults* v. *Mitchell,* 15 Pa. St. 371; *Clemens* v. *Conrad,* 19 Mich. 170.

MITCHELL, J. This was an action for damages for the conversion of a quantity of saw-logs. They were cut by defendants upon the land of plaintiff, in Morrison county, and transported to a boom in the Mississippi river, where they were when plaintiff demanded them from defendants. The defendants justify the cutting under a written contract executed in the autumn of 1883 between plaintiff and Leighton and Fenwick, and by the latter assigned to defendants. The two principal questions are—*First,* the right of defendants to cut and remove the timber; and, *second,* if they had no such right, the measure of plaintiff's damages.

The first question depends entirely upon the construction of the grant made in the contract, which is "*the right, privilege, and permission to enter and cut, during the logging seasons of 1883–84 and 1884–85, all the pine timber fit for saw-logs growing upon the following described land.*" That the timber in question was both cut and carried away from the land after the expiration of the logging season of 1884–85 is conceded. It would seem plain to us that this contract was a mere license to enter, and an agreement for the sale of

such timber as the licensees should cut within the limit of the license. But, call it by what name we may,—a license to enter and cut; a sale; a conditional sale; or a contract to sell, coupled with a license to enter,—the object and extent of the grant was only so much timber as the grantees should cut during these two logging seasons, and no more. Contracts relating to an interest in standing timber, with an express limitation as to the time of removal, are familiar to the American courts in the timbered states. The cases arising upon them are extensively collated in the exhaustive briefs of counsel, but are too numerous to be here considered in detail. Sometimes these contracts are in the form of conveyances of timber, sometimes of a sale, coupled with a license to enter, sometimes of a formal license to enter and cut, and again of a reservation of the timber by the grantor in the conveyance of the land. But, whatever the form, the limitation as to the time of removal has been almost invariably held to be a limitation of the grant or reservation itself. The reasons are manifest. Any other construction would be against the expressed intention of the parties. Moreover, if the right of entry be not limited to the time fixed, it would be practically unlimited, which would amount to so serious an incumbrance upon the land as to materially interfere with the owner's right to use or dispose of it. In a very few cases it has been held that, if the timber be cut within the time, the property is in the vendee, although not removed within the limitation of the contract. This doctrine would seem to be based upon the supposed hardships of such a case, rather than upon strict logic. But no such question arises in the present case. The suggestion of counsel, supported, perhaps, by one or two cases, that this contract was an executed sale of all the timber standing on the land, but with a limited license to enter and cut, and that if the licensee should enter and cut after the expiration of the license, while he would be guilty of a trespass on the land, yet plaintiff could not recover the value of the timber, because it was the property of defendants, would seem to us to involve a legal solecism. It would be an anomaly in the law that one man should own standing timber on the land of another, with no right of entry

to cut and take it away. Such a right would certainly be a barren one. If the limitation of the right of entry is of any effect at all, it must operate as a limitation upon the grant itself.

There are other provisions in this contract which in our judgment corroborate our construction of the grant, and are opposed to the idea that the parties intended it as a present unconditional sale of all the standing timber on the land. These will be obvious upon an examination of the instrument, and need not be here referred to. There are two, however, upon which defendants especially rely as being in favor of their construction, and upon which the court below laid some stress. The first is that to the effect that the grantees should enter upon the land as soon as the logging season commenced, with sufficient men and teams to cut and haul the timber upon the land suitable for saw-logs, and to cut the same clean, acre by acre, as they went, without waste, and with as little damage as practicable to the young timber. Evidently the parties used a printed blank specially adapted to ordinary sales of stumpage by the thousand, and endeavored to alter it so as to express their agreement. The result is that some things are left in which are not particularly applicable to a transaction like the present. But taking it as it stands, and whether we construe this provision as a covenant or a condition, we can see nothing in it necessarily inconsistent with the limitation of the grant by the limitation as to time. The other provision relied on by defendants is that which provides for the payment of a gross sum in consideration of the grant. It is in these words: "*For the logs so to be cut as aforesaid,*" the parties of the second part "will pay, or cause to be paid, to the party of the first part, as stumpage *on said logs,* the aggregate sum of $7,750." This expressly states for what this is to be paid, viz., "for the logs so to be cut as aforesaid." And we can see no reason why parties may not agree to pay or accept a gross sum for the timber which may be cut within a limited time, based, as it may be, upon an estimate of what could probably be cut within that time. Nor is there any controlling reason why they might not fix the amount, as defendants offered to prove in this case, upon an estimate of the value of all the timber standing upon the land. The fact that the parties

anticipated, as they probably did in this case, that the time fixed in the contract might be sufficient to enable the grantees or licensees to cut all the timber, is not at all inconsistent with a limitation of the grant by the limitation of time for cutting.

2. Defendants offered to prove that before the contract was made there was an examination of the amount of timber on the land, and that the sum of $7,750 was arrived at from a computation of the value of all the timber according to this estimate. For reasons already suggested, this would have been wholly immaterial if proved; it was also incompetent. The principle upon which evidence of surrounding circumstances is admissible in the exposition of written contracts is that the court may be placed, as near as possible, in the situation of the parties whose language is to be interpreted. But such evidence is not admissible to prove an unexpressed intention of the parties, or their prior negotiations, which must be deemed to be merged in the written instrument. Its use is limited simply to develop and throw light upon the real meaning of that which is written, in case of ambiguity arising from the face of the instrument. No such ambiguity existed in this case. The evidence was properly excluded.

3. The only other question is the measure of damages. By the cases of *Whitney* v. *Huntington,* 37 Minn. 197, (33 N. W. Rep. 561,) and *Nesbitt* v. *St. Paul Lumber Co.,* 21 Minn. 491, as the latter is limited or qualified by the former, this court has adopted the following rules upon this subject as applicable to cases of this kind: *First,* where the defendant is a wilful trespasser, the full value of the property at the time and place of demand; *second,* where he is an unintentional or mistaken trespasser, or, as expressed in *Whitney* v. *Huntington,* where he honestly and reasonably believed that his conduct was rightful, the value of the property at the time it was taken,—that is, the value of the timber standing; *third,* if the defendant is an innocent purchaser from a wilful trespasser, the value of the property at the time of such purchase. These rules may not be logically consistent with each other, but in practice they perhaps work as equitably as any that could be adopted, and seem to be in accord with the prevailing doctrine both in this country and England. See *Wooden-*

*Ware Co.* v. *U. S.*, 106 U. S. 432, (1 Sup. Ct. Rep. 398.) It was also decided in *Whitney* v. *Huntington, supra,* that actual notice of the adverse claim of the true owner is not inconsistent with good faith on part of the trespasser, using the term in the sense, in which it is often used, of the absence of wilful or intentional wrong or bad motive. Such honesty of purpose is not inconsistent with knowledge of all the facts out of which the claim of the true owner arises, but where a party acts under an honest and reasonable mistake as to the legal rights which grow out of these facts. Such was the case in *Whitney* v. *Huntington, supra;* also in *Jegon* v. *Vivian,* 6 Ch. App. 742. In the exclusion of evidence the court below proceeded upon the idea that notice of plaintiff's claim was inconsistent with good faith in the sense referred to, or, what amounts to the same thing in this case, that such notice necessarily rendered defendants wilful trespassers. The evidence as to the honesty of purpose and intent on part of defendants ought to have been admitted, and the question at least submitted to the jury, under proper instructions.

For this reason the order granting a new trial must be affirmed.