SAMUEL MATHEWS *vs.* JAMES MULVEY and another.

April 30, 1888.

Sale of Stumpage—Condition Subsequent—Taxes to be Paid by Purchaser—Attempted Purchase from State held a Payment.—A. sold to B. "all the pine timber" on certain land described, the latter to have "as long as he wishes to cut the same, provided he pay the taxes on said lands." For a tax becoming due soon after the sale the land was proceeded against and sold, and struck off to the state. B. afterwards applied for an assignment of the right of the state under the sale, paying all that the law requires on such an application, including subsequent taxes, and received from the county auditor a certificate, void on its face,.

as an assignment. *Held* that, as between the parties, this operated only. as a payment of the taxes, and that, as there was no demand by A. for an earlier payment, it was in time to avoid a forfeiture of the right to enter and cut the timber.

Action of trespass, brought in the district court for Kanabec county, for cutting and carrying away pine timber belonging to the plaintiff. Defendants, in their answer, denied plaintiff's ownership of the timber. The action was tried by *Crosby,* J., certain issues being submitted to a jury. The court found that on November 14, 1881, Castle & Marsh, being owners of the timber and of the land on which it was standing, made with the plaintiff the contract mentioned in the opinion; the neglect of plaintiff to pay taxes, and his subsequent taking the certificate mentioned in the opinion, on December 9, 1884; that on December 4, 1884, Castle & Marsh, by proper warranty deed, recorded December 10, 1884, conveyed the land to defendants, and that during the winter of 1884–5, the defendants entered on the land, and cut and carried away the timber, with probable cause to believe it was their own. The jury found that when defendants took their deed they knew the timber had been sold to plaintiff. Judgment was ordered and entered for plaintiff for the value of the standing timber and interest, and the defendants appealed.

*Searles & Gail,* for appellants.

Plaintiff's taking a void assignment was not done in the interest of the land-owners or in performance of the contract, but on his own behalf and in opposition to the land-owners and the contract, and therefore cannot be held in his favor to be a payment of the taxes and a performance of the condition. *Clementi* v. *Jackson,* 92 N. Y. 591.

*James N. Castle* and *Fayette Marsh,* for respondent.

GILFILLAN, C. J.[1] The contract in this case differs from that in *King* v. *Merriman, ante,* p. 47, in that the contract in that case granted only the "right, privilege, and permission to enter and cut," during a specified time, all the pine timber fit for saw-logs growing on certain land described, while in this case the contract is, in terms, a sale of "all the pine timber" on land described, "said Mathews to have as

---

[1] Mitchell, J., being absent, took no part in this decision.

long as he wishes to cut the same, provided he pay the taxes on said land." In that case the contract was held to be one for the sale of only so much timber as the grantee might cut during the time specified, and that he had no interest in timber remaining uncut at the expiration of that time. In this the contract must be construed as a present, executed sale of all the timber, vesting the title at once in the grantee. If nothing had been said in the contract as to the time within which the timber should be cut, there would have passed, by implication, a right to enter on the land, and cut and remove the timber, certainly for a reasonable time. But the grantee is given "as long as he wishes, provided he pay the taxes on the land." When this right should expire, the practical effect would be to divest the right in the timber, or at any rate to leave it a barren and unavailable right, for, as the court said in the case referred to, "it would be an anomaly in the law that one man should own standing timber on the land of another, with no right of entry to cut and take it away." As the title to the whole of the timber passed at once on the execution of the contract, the limitation as to the right to cut is in the nature of a condition subsequent for defeating the vested title, and not, as in the case of *King* v. *Merriman*, a mere description of the timber, (to wit, that cut within the specified time,) the title to which should pass. As a condition subsequent it is not to be favored. When, in this case, would the failure to pay taxes operate as a forfeiture of title to the timber still uncut? Would it so operate *eo instante* upon the taxes becoming due, or upon their becoming delinquent, (as defendants claim,) without any further act or event? We think not. The grantors could probably, by proper demand, have called on the grantee to pay the taxes in time to save the penalty incurred by their becoming delinquent, and his failure to comply with so reasonable a demand might have operated to terminate his right. But in the absence of such a demand, a payment of the taxes even after delinquency would be sufficient, under the contract, to avoid a forfeiture by the grantee, for such payment would protect the grantors. Now, as we gather from the record, the tax for 1881 became delinquent; judgment for the tax was rendered, and the land sold and struck off to the state, in 1882; and in 1884 the grantee in the contract applied

to the auditor of the county for an assignment of the right of the state, paid the amount required by law to be paid to procure such an assignment, including the taxes for the years subsequent to the taxes for which the land was sold, and received from the auditor a certificate, void on its face, as an assignment of the right of the state. This payment covers all the years with respect to which it is claimed there was failure to pay taxes. The grantee got no assignment. If he had procured one, he could not have asserted it as such, or as anything but a payment of the taxes, under the contract, as against his grantors, or any one claiming under them. His relations with them were such that he could have got nothing from the transaction that would not inure to their sole benefit. It is not true, as argued by defendants, that, as the assignment was void on its face, he could apply for and have his money refunded, so that the liability of the land to be sold for the taxes would be restored. His relations to the land were such that in law the transaction would operate as a payment of the taxes, and he made the payment voluntarily. Though he got no formal assignment, he got all that in law he was entitled to, that is, a discharge of the land from the claim of the state on account of the taxes. The court below was right in holding that, as between the parties, the transaction was a payment of the taxes under the contract.

Judgment affirmed.