PINE COUNTY *vs.* DAVID TOZER *et al.*

Argued Dec. 15, 1393.    Affirmed Jan. 25, 1894.

Nos. S420, 8421, S433.

Taxation of a right to cut timber.

  *Held,* that under certain contracts, the nature thereof fully appearing in the opinion, made between the appellant railway company and the other appellants, the latter acquired an interest or estate in the lands described in the contracts which was subject to assessment and taxation, under the laws of this state, for the year 1887.

Statement certified, under 1878 G. S. ch. 11, § 80, from the District Court of Pine County, *F. M. Crosby,* J., and made September 5, 1893, in a proceeding to enforce payment of delinquent taxes of 1887, levied upon the right and interest of David Tozer in the standing pine timber on certain lands in Pine County.

Also a like statement certified from the same court at the same term in a proceeding to enforce payment of delinquent taxes of 1887 levied upon the right and interest of Empire Lumber Company, a corporation, in the standing pine timber on certain other lands in that county.

Also a like statement certified from the same court at the same time in a proceeding to enforce payment of delinquent taxes of 1887 levied upon the right and interest of Durant, Wheeler & Co. and David Tozer jointly in the standing pine timber on certain other lands in that county.

By certain acts of the Federal Congress approved May 5, 1864, 13 U. S. Stat. ch. 79, p. 64, and July 13, 1866, 14 U. S. Stat. ch. 178, p. 93, there was granted to Minnesota every alternate section of the public lands designated by odd numbers to the amount of ten sections per mile for the purpose of aiding in the construction of a railroad from St. Paul to Duluth. These lands were granted by the state to the Lake Superior and Mississippi Railroad Company and were by it mortgaged and by foreclosure transferred to the St. Paul and Duluth Railroad Company. By Sp. Laws 1865, chapters 2 and 8, the company was required to pay into the state treasury three per cent of its gross earnings in lieu and in full of all taxation and assess-

ment upon its railroad, lands and other property, including the Federal grant so long as the lands remained unsold. These provisions were duly accepted and became a contract. Const., Art. 4, § 32.

By Laws 1887, ch. 128, § 1, it was enacted that whenever any railroad company to which lands have been granted has sold, assigned, transferred or disposed of any estate, right, title or interest therein or thereto, the right, title, estate or interest of such purchaser, assignee or holder by whatsoever mode or in whatever form such sale, transfer or assignment is made, shall become and be taxable and shall be assessed as other real property in this state; and the taxes on such right, title, interest or estate shall be collected and enforced as taxes on other real property; and the purchaser at any such tax sale of such right, title, interest or estate shall acquire, take, hold or be subrogated to all the right, title, interest or estate of the person holding the same under or from the railroad company, and said purchaser at said sale shall have the right to do any and every act or thing which the said person holding such right, title, interest or estate under such railroad company might, could or should do or have done in order to be entitled to a perfect title or deed of such lands; and on performance the purchaser at such tax sale shall be entitled to a deed of such lands from the railroad company holding the legal title thereto; provided, always, that the right of redemption from such tax sale shall exist as in other cases of the purchase of real property at tax sales.

The St. Paul and Duluth Railroad Company made contracts with David Tozer, Empire Lumber Company and with Durant, Wheeler & Co. and David Tozer, selling to the three parties severally the right to cut and remove the standing pine timber on portions of the land received by it under the congressional grant. The pertinent terms of these contracts are stated in the opinion of the court. In the years 1887 and 1888 proceedings were taken by the officers of Pine County to tax the rights acquired by the purchasers under these contracts. The taxes so levied were not paid and became delinquent and application was made to the District Court for judgment, pursuant to 1878 G. S. ch. 11. The parties appeared and answered. No objection was made to the form of the proceedings but the purchasers contended that their rights to cut the standing pine trees

was not an estate or interest in the land but a mere easement not taxable and that the payment of the three per cent of its gross earnings by the St. Paul and Duluth Railroad Company covered all lawful taxation upon the lands and the timber growing thereon and upon the stumpage permits. The trial court overruled the objections and gave judgments for the taxes. At the request of the judgment debtors the court made statements of the facts and certified the same to this court.

*Lloyd W. Bowers, Warner Richardson & Lawrence,* and *Lusk Bunn & Hadley,* for the tax judgment debtors, cited *King* v. *Merriman,* 38 Minn. 47; *Mathews* v. *Mulvey,* 38 Minn. 342; *Drake* v. *Wells,* 11 Allen, 141; *Fletcher* v. *Livingston,* 153 Mass. 388; *United Society* v. *Brooks,* 145 Mass. 410; *Genet* v. *Deleware & H. C. Co.,* 136 N. Y. 593; *Treat* v. *Hiles,* 68 Wis. 344; *Clove Springs Iron Works* v. *Cone,* 56 Vt. 603; *Chelsea Water Works* v. *Bowley,* 17 Q. B. 358; *Winston* v. *Johnson,* 42 Minn. 398.

*Robert C. Saunders, Henry W. Childs* and *George B. Edgerton,* in support of the tax judgments, cited *People ex rel.* v. *Cassity,* 46 N. Y. 46; *Appeal of N. B. & M. R. Co.,* 32 Cal. 500; *People ex rel.* v. *Beardsley,* 52 Barb. 105; *State ex rel.* v. *Minneapolis Mill Co.,* 26 Minn. 233; *State ex rel.* v. *District Court,* 31 Minn. 354; *Reynolds* v. *Fleming,* 43 Minn. 513.

COLLINS, J. These were proceedings to enforce the collection of taxes assessed and levied for the year 1887, in conformity with the provisions of Laws 1887, ch. 128, upon certain rights, interests, and an estate held and owned by various parties, in and to a number of tracts of land situated in Pine county. These lands were a part of those granted to the St. Paul & Duluth Railway Company in aid of construction, and at the time of the assessment and levy the naked title thereto remained in such company. It was conceded by the state in these proceedings that by reason of the substituted method of taxation provided for by Sp. Laws 1865, ch. 8, the interest and estate of the company in these lands, whatever it might be, could not be assessed or taxed; but the court below held that, because of certain timber contracts which the railroad company had

entered into with appellants Durant, Wheeler & Co., David Tozer, and the Empire Lumber Company, certain rights, interest, and estate had been acquired by the latter in and to the lands, which rights, interest, and estate were taxable. The objections interposed by the three parties last named were overruled, and thereupon, as provided by the statute, the questions involved were certified up for the decision of this court.

In one of these contracts with Durant, Wheeler & Co. and David Tozer, of date January 11, 1881, the railway company granted, bargained, sold, and transferred all of the pine timber, fit for merchantable sawlogs, standing, growing, or being upon certain lands, particularly described, with the right, privilege, and permission to enter upon said lands and cut and remove said timber at any time previous to the 1st day of May, 1899, (a period of more than 18 years,) and when so cut and removed, and upon due payment of the notes hereinafter mentioned, to control, own, and possess said timber. It was agreed that all logs cut on the lands should be banked separately from other logs, and there was an attempt, perhaps, to provide that they should be marked with a mark recorded in the name of the railway company; but the attempt, if made, was futile, because no mark was specified or described.

The consideration to be paid by Durant, Wheeler & Co. and Tozer for this timber was $80,000, for which sum their notes were given, payable to the order of the treasurer of the railway company. Each note was for the sum of $2,500, and matured, one September 1st, one October 1st, one November 1st, and one December 1st, of each year, the last falling due December 1, 1889. Ten thousand dollars a year was thus to be paid, and, upon such yearly payment, Durant, Wheeler & Co. and Tozer were to become absolute owners of 8,000,-000 feet of timber or logs. If they should cut more than 8,000,000 feet of logs in any one year, they were to pay, unless said logs had previously been paid for, $1.25 per thousand feet for the excess, in addition to the notes maturing that year; the amount of said excess payment to be indorsed upon notes thereafter to fall due. They were to cut not less than 5,000,000 feet of logs each year, until said notes were fully paid, or the timber exhausted. The time of payment of the notes was made of the essence of the agreement, and

there were other conditions in the contract, of no concern in the determination of these proceedings.

The contract made between the railway company and the appellant Tozer bore date December 3, 1885. In consideration of the sum of $60,453.75, there was granted to Tozer the right, privilege, and permission to cut and remove, previous to May 1, 1896, (more than 10 years,) all the pine timber fit for sawlogs, growing upon lands therein fully described. No smaller timber was to be cut than such as would make two logs, each 12 feet in length, and 10 inches in diameter at the top end. A mark designated in the contract, and recorded in the name of the railway company, was to be put upon all logs cut by Tozer on these lands; and then followed various conditions respecting the rights and duties of the parties. Sales of logs could be made by Tozer, but subject to the approval of the company. At the time of the execution of the contract he paid the sum of $20,151.25 (one-third of the agreed price) in cash, giving his notes for the balance, payable to the order of said treasurer, each for one-third of the amount, and due on December 3, 1886, December 3, 1887, and December 3, 1888. Until these notes were paid, the title to the timber or logs remained in the railway company.

The contract with the Empire Lumber Company was much like the one last described. It bore date January 12, 1887. The grant was in the same general language, the timber to be cut and removed before May 1, 1895, (about 8 years,) from a part of the lands, and before May 1, 1900, (about 13 years,) from the remainder. No tree was to be cut which would not make one log 16 feet long, and 10 inches in diameter at the top end. As in the contract with Durant, Wheeler & Co. and Tozer, first mentioned, reference was made to marking the logs with a mark to be recorded in the name of the railway company, but no mark was specified. The consideration agreed upon for the timber covered by this contract was $162,684, of which one-third—$54,228—was paid in cash, one-third of the balance was to be paid January 12, 1888, one-third a year later, and one-third January 12, 1890; promissory notes, bearing 7 per cent. interest, and payable to the order of said treasurer, being given therefor by the lumber company. The time of payment of these notes was also made of the essence of this contract, and, as was the case with the

Tozer agreement, the title to the timber was to remain in the railway company until the notes were paid.

The trial court found that upon each of these tracts of land there were small pine trees, as well as trees of other varieties, which would not come within the terms of the contracts, but it was also found that the principal value of the several tracts of land consisted of the timber contracted for.

We have thus quite fully stated the contents of these instruments, that their actual character might be disclosed. The real nature and purpose of the transactions, as evidenced by the writings, seem very clear, and the most careful scrutiny will fail to show wherein they differ, except in mere form of expression. The object and design of each was to grant the right and privilege of cutting and removing all of the pine trees suitable, and to become suitable, for pine logs, standing and growing upon the various tracts of land, and also to fix and prescribe periods of time within which these trees were to be cut and removed. Nothing less than this was intended or accomplished by the writings. From an examination of their terms and conditions, it is plain that in these proceedings they must be construed alike, and that the rights and interests obtained thereunder are identical.

We are not required to fully determine exactly what title the persons who contracted for this timber acquired therein, or what their rights were. But it ought not to be urged, with any hope of success, that by means of the contracts they had secured nothing more than a bare license to go upon the lands, and to cut and remove the timber, until forbidden so to do by the railway company, and, should the right of entry be refused, their only remedy would be an action to recover damages as for a breach of contract; yet this is really the position of counsel for one of the appellants.

Under these contracts, the purchasers had secured the right to enter upon the lands, and to cut and remove the timber. That the title thereto was to remain in the railway company until the purchase price was fully paid did not affect the right or interest which they had obtained. They had also secured the very valuable right or privilege to cut and remove this timber about as they chose, for long periods of time, including such possession of the land as was incidental and necessary to a proper exercise of this right or permit. Through this

they had secured the benefit of many years' growth of the trees, and had been placed in a position to take advantage of a depression in the wages of laboring men, or of an inflation in the prices of logs or timber. This feature of the contracts was valuable in other ways, which need not be mentioned. When these proceedings were commenced, Durant, Wheeler & Co. and Tozer had paid $50,000, or more than one-half of the agreed price of the timber purchased by them, if they had met their notes at maturity; and we can presume that they had, in the absence of an intimation to the contrary. The other purchasers, Tozer and the Empire Lumber Company, had each paid one-third of the price agreed upon for the timber. Each had been granted, and in part had paid for, things annexed to the freehold, with the right to the soil for a long time, for the purpose of further growth, and consequent profit, of that which was the subject of the grant. They had obtained the right of entry upon the land and of possession for many years, for the purpose of cutting and removing the timber, and they had undoubtedly an interest which would have been subject to seizure and sale upon execution, not as personalty, but as real estate. Their interest was not that of a licensee,—simply to go upon and occupy the land, and cut and remove timber until the license was revoked; but there was a valid grant of the right and privilege of occupying the land, and cutting and removing the timber, a part of the realty, which, when severed, would become personalty. They had acquired property rights which could not be taken away from them. If what they held under these contracts was not an interest or estate in real property, it is difficult to conceive an interest or estate, less than a fee, which would be.

Counsel for appellants have referred to cases, principally from Massachusetts, in which it was held that a sale of timber to be severed from the freehold by the vendee under a special license to enter upon the land for that purpose cannot be regarded as passing an interest in the land, within the meaning of the statute of frauds. We do not regard any of these cases as pertinent to the question now before us, which relates simply to the right of taxation, and not to the statute of frauds; but in many of the states it has been decided that a sale of growing timber to be cut and removed in the future conveys an interest or estate in lands, within the meaning of the statute. *Putney* v. *Day*, 6 N. H. 430; *Buck* v. *Pickwell*, 27 Vt. 157;

*Owens* v. *Lewis*, 46 Ind. 488; *Miller* v. *Zufall*, 113 Pa. St. 294, (6 Atl. 350;) *Slocum* v. *Seymour*, 36 N. J. Law, 139.

Attention has been directed to the cases of *King* v. *Merriman*, 38 Minn. 47, (35 N. W. 570,) and *Mathews* v. *Mulvey*, 38 Minn. 342, (37 N. W. 794,) in which contracts relating to the cutting and removal of growing pine trees were the subject of controversy between the parties thereto. We are not able to see, from an examination of either of these cases, that they have any bearing upon the right of the state to tax such interest and estate as a person may acquire under similar contracts with the owner of the freehold.

Our conclusion is that all of the present appellants, except the railway company, obtained, through their respective contracts, an interest or estate in the lands described which, under the laws of this state, was subject to taxation for the year 1887.

The cases are remanded, with instructions to enforce the collection of the taxes imposed upon such interest or estate.

(Opinion published 57 N. W. Rep. 796.)