J. M. BOLLAND v. EUGENE O'NEAL and Others.[1]

July 24, 1900.

Nos. 12,205—(254).

**Sale of Timber—License.**

An instrument which granted the right to enter upon premises at any time within five years, and to cut and remove therefrom all the standing pine, is a conveyance of an interest in the land, and not a license revocable at will.

**Logging Camp of Vendee—Notice to Subsequent Purchaser.**

Parties who entered into possession of such premises, under such a conveyance, for the purpose of removing the timber, and constructed logging camps, and were engaged in the operation of cutting timber therefrom, were in such open and adverse occupancy as to constitute notice of their right to subsequent purchasers of the land.

**Same.**

It is immaterial that such camps were more extensive than required for the removal of the timber on the land in question, and that the parties were engaged in general logging operations in the vicinity.

Action in the district court for Mille Lacs county to recover $9,422.13 damages for cutting and carrying away timber from plaintiff's land. The case was tried before Searle, J., and a jury, which rendered a verdict in favor of plaintiff. From an order denying a motion for a new trial, defendants appealed. Reversed.

*J. N. Searles*, for appellants.

*Calhoun & Bennett* and *Chas. W. Kent*, for respondent.

LEWIS, J.

This action was brought to recover damages from defendants for the cutting and carrying away of pine timber from land claimed to be owned by plaintiff. In 1894 the then owner of the land, Wray, executed in the usual form, under seal, a certain instrument by which he sold the standing pine on the land to defendants Mulvey & Carmichael. The consideration expressed was $1,200, and the granting clause was as follows:

[1] Reported in 83 N. W. 471.

"\* \* \* do by these presents grant, bargain, and sell unto the said parties of the second part, their heirs and assigns, the right, privilege, and permission to enter upon the following described tracts of land [description] at any and all times prior to the 6th day of June, A. D. 1899, on which last mentioned date this permit shall cease and terminate, and cut and remove from said lands, during said time, all the pine timber standing or being thereon."

Then follows a covenant of seisin as to the land, a covenant of warranty of title to the timber, and an agreement on part of the grantor to pay the taxes upon the premises during the life of the grant. This deed was never recorded. On October 10, 1898, Mulvey & Carmichael entered into a contract with the other defendants, O'Neal Bros., by the terms of which the latter firm were to cut and remove all of the pine upon the premises suitable for logging. In pursuance of this agreement O'Neal Bros. entered upon the land and removed the pine during the winter of 1898–1899; and while in possession the owner of the land, Wray, conveyed it, without reservation of the pine, to the plaintiff. At the trial below, plaintiff had a verdict for $2,773.60, and defendants appeal from an order denying a new trial.

The deed from Wray to plaintiff was dated January 19, and was recorded in the proper county January 26, 1899. In October, 1898, O'Neal Bros. entered upon the land, and established a logging camp; building two barns, a cook house, sleeping quarters, office, storehouse, and blacksmith shop. The land consisted of 120 acres, and a road ran through the center 40, east and west. One 40 adjoined this center one on the south, and the other on the north. All of the buildings, except the office, were located on the central 40; and the blacksmith shop and storehouse were on the north side of and close to the road, and the cook house was on the south side of and close to the road. The other buildings were scattered over a considerable tract of land, the office being located on the northwest corner of the south 40, and near a branch road or trail. This camp was established for the accommodation of about one hundred men and many horses, and O'Neal Bros. occupied it with a large force of men and teams, and were conducting logging operations upon lands in that vicinity during the months of November and December, 1898, January and February, 1899. There was a conflict of testimony as

to the time the timber was cut upon the land in question. It was maintained by defendants that they had cut all on the north 40 by January 19, and the entire amount by February 7, while plaintiff claimed that most of it was cut after February 7. This latter date was the day upon which plaintiff served notice upon defendants of his ownership of the land and timber. The cause was tried and submitted by the court below upon the theory that the deed from Wray to defendants Mulvey & Carmichael was only a license to go upon the land, and was revoked by the deed from Wray to plaintiff, hence defendants were liable for the timber they cut after receiving actual notice of the revocation by that deed. The jury was instructed to return a verdict for the plaintiff for the value of the timber cut by defendants after the receipt of that notice.

Defendants rested upon the theory that such deed was a conveyance of an interest in the land, and could not be revoked by the mere fact of a subsequent conveyance of the land, and contended that, although their deed was not recorded, they were in such possession of the premises as put plaintiff upon notice of their rights when the land was conveyed to him, January 19, 1899. For the purpose of raising that question, defendants requested the court to submit to the jury the following instruction:

"If the jury find from the evidence that, at the time plaintiff took his deed from Wray, the defendants O'Neal Bros. were occupying the land in question with their camp buildings, camp outfit, and crew, and actually cutting and removing the timber therefrom, under a permit previously granted defendants, Mulvey & Carmichael, by Wray, plaintiff's grantor, then they will find a verdict for the defendants."

The request was refused, and the assignment directed to this point is the only question in the case requiring notice.

The deed from Wray to Mulvey & Carmichael was not a mere license, revocable at the will of the grantor. It was in effect a conveyance of the pine, with the privilege to go upon the premises within a stipulated time and remove it. As between the grantor and grantees, the latter had the absolute right to enter upon the land at any time before June 6, 1899, and to cut and remove the timber.

81 M.—2

Such a deed is a conveyance of an interest in real estate.    Pine Co. v. Tozer, 56 Minn. 288, 57 N. W. 796.

Was the possession of defendants of such a nature, as a matter of law, as to put plaintiff upon inquiry?    The nature of the possession in such cases would tend to be in accordance with the nature of the land, and the uses to which it was adapted.    If it were farming land, the indicia of possession would more naturally be in the way of preparing it for tilling purposes.    If it were grazing land, the preparation for permanent possession would likely be different.    Here we have timber land, and the chief value is in timber.    The defendants owned that timber, and had the right to possession of the land in order to remove it.    As between themselves and the owner of the land, they were required to take possession only in such a manner as would serve their purpose in removing the timber.    They might go in at night, or stealthily remove it, as timber thieves or trespassers, and their grantor could not complain; but, as to subsequent purchasers, such temporary possession would not be sufficient to attract notice.    But O'Neal Bros. did not do it that way.    They took actual and open possession of about 20 acres of the central portion of the land, along the roads, and scattered buildings all over it. No one could go along that way without being challenged at once by open, notorious, adverse acts of possession.    They had commenced to cut the trees down, and were in the act of cutting timber upon the land, when plaintiff purchased.

It is claimed that they overdid it by taking possession on too large a scale,—as though a passer-by would say: "These people are not in possession of this land with any intent to remain or to take off this timber.    They are engaged in the general logging business, and are after the timber on some other land."    The law of notice by possession is based upon the character of the acts, as tending to show a purpose of maintaining an interest inconsistent with the owner's title.    And such acts must be such as will attract the attention of any one going upon the land.    Therefore the more open, notorious, and visible such acts are, if consistent with the purpose in view, the more probability of such possession being known.    The fact that defendants had built large camps, and stationed thereon a larger crew of men and force of teams than was necessary to log the 120

acres in question, was not inconsistent with their purpose to cut the logs from that land. The ordinary man passing by while such operations were going on would have no possible ground to assume that the possession was without reference to the timber on the premises, and the ordinary person contemplating the purchase of the land under such circumstances would want to know the meaning of those operations.

The order denying defendants' motion for a new trial must be reversed for error in refusing to give the instruction as stated.

Order reversed, and a new trial granted.