JOHN G. HALL & others *vs.* BOSTON AND WORCESTER RAILROAD
CORPORATION.

The owners of a lot of flour which had been brought to Boston by a railroad corporation,
and which remained at the railroad depot, sold fifty barrels thereof and gave to the pur-
chasers an order upon the railroad corporation for the delivery thereof, and the pur-
chasers upon presenting the same received another order, or " flour check," for the same,
which according to the usual course of business was delivered to a clerk who had charge
of the actual delivery of flour from the depot, and who was accustomed to keep such
" flour checks," and take receipts upon the back thereof for the flour actually delivered
upon the same. This clerk delivered twenty-two barrels of flour to the purchasers, and
twenty-eight barrels to other persons not authorized to receive them. *Held,* that the
railroad corporation were liable to the purchasers for the value of the twenty-eight barrels,
without regard to the question of due care or negligence on their part.

TORT against a railroad corporation for the conversion of
twenty-eight barrels of flour.

At the trial in the superior court, before *Morton,* J., it appeared
that Messrs. Clap & Brother, dealers in flour, were the owners
of a large quantity of flour of the same brand as the flour
claimed to have been converted by the defendants, which had
been consigned to them at Boston, and brought to that city by
the defendants as common carriers, and was deposited in their
freight depot. The plaintiffs entered into a contract with Clap
& Brother for the purchase of fifty barrels, part of this flour, and
paid them therefor, and received a bill of sale thereof. Clap &
Brother delivered to them an order upon the railroad company
for the flour so purchased. The plaintiffs gave the same to
Murphy, a teamster, who presented it to Elder, a clerk of the
defendants, signed a receipt for the same and received from him
a " flour check," no flour being then actually delivered or re-
ceived. This receipt and " flour check " were as follows :

" Boston, Oct. 20, 1865. Received of Boston & Worcester.
Railroad Corporation in good order for J. G. Hall & Co. per
order of Clap & Bro., 50 Bbls. Flour — Safford. David Mur-
phy."

" Flour Check . . . . B. & W. R. R. No. 1051. Boston,
Oct. 20, 1865. Deliver the bearer, fifty Bbls. Flour Safford
brand of Clap & Bro., Lot.        Fogarty.        2 ct. Stamp
*Cancelled*

(Indorsed,)  "*Received the within.*
" 12 Bbls. flour.  6 Door O. H.  David Murphy.
" Rec'd 10 Bbls.  David Murphy.
" 18  A. Hall.
" 10  D. Donnovan."

This check Murphy took to another part of the depot where the flour was, and presented the same to Crabtree, a person authorized to deliver the same, and received from him at two different times twelve and ten barrels of flour, which were indorsed on the check. It was proved that the remaining twenty-eight barrels were not in fact received by the plaintiffs, but delivered to some other parties not authorized to receive them.

It was and long had been the practice of said Elder, known to the other officers of the defendants, when such orders were brought to him by a teamster or other person authorized to receive goods for a consignee, to require the party bringing the same to receipt for the goods, and then to give him a check to be taken to the person authorized to deliver flour, who thereupon took and kept possession of the check; and, as the flour was delivered from time to time, took receipts therefor upon the back of said check, and, when the check was filled, returned it to Elder as his voucher, as was done in this case.

It was not contended that freight had not been paid.

Nothing was charged or paid for storage as such, but the flour remained wholly for the convenience of the party taking the same, at an inconvenience to the defendants, who preferred to have the goods taken away at once. No statement of this kind was made to the plaintiffs, and no objection was made to their taking their flour from time to time in accordance with the usage above named, which was known to them. No notice was given to the defendants, and they did not know that there had been any contract for a sale of the flour to the plaintiffs, or that this order was for any other purpose than to obtain the flour for Clap & Brother, except so far as implied in the order for the same. The fifty barrels of flour were not separated from the other flour belonging to Clap & Brother, by them or by the plaintiffs or defendants, unless as otherwise stated herein

There were indorsements on the check of the delivery of twenty-eight barrels to persons who, as the plaintiffs proved, were not authorized to receive them, and were entirely unknown to them, and the plaintiffs contended that this was a separation.

The judge instructed the jury that, if the facts above stated were proved, there was a sale of the fifty barrels of flour to the plaintiffs, by which the property therein passed to them without separation or other act, or manual delivery, to enable them to maintain this action ; that there was also an acceptance of the order by the defendants, which bound them to deliver fifty barrels therein mentioned to the plaintiffs, and made them liable to the plaintiffs for ordinary care and diligence in keeping and delivering the same ; and that if without such care they delivered them to a person not authorized by the plaintiffs to receive them, or, under the circumstances of the case, refused to deliver them on demand, it would be a conversion which would render them liable for the value of the flour not delivered ; and that Crabtree in reference to such delivery was the agent of the defendants, and not of the person entitled to receive the flour, although said check remained with him as aforesaid, so that the defendants would be responsible for his acts in delivering them.

The defendants requested the court to instruct the jury that the defendants were not liable to the plaintiffs as bailees or warehousemen for hire, but only as depositaries bound to slight diligence ; but the judge refused, and instructed them as above.

The jury returned a verdict for the plaintiffs, and the defendants alleged exceptions.

*G. S. Hale,* for the defendants. The facts stated do not show an acceptance of the order, which will make the defendants liable to the plaintiffs. If so, the defendants would be subject to an indefinite number of actions by messengers, teamsters and truckmen. *Gibson* v. *Cooke,* 20 Pick. 15. *Mandeville* v. *Welch,* 5 Wheat. 286. The plaintiffs had no such interest in the flour as will entitle them to maintain this action until a separation. They cannot set up an unauthorized delivery which they repudiate. *Bush* v. *Davis,* 2 M. & S. 397. *White* v. *Wilks,* 5 Taunt. 176. *Scudder* v. *Worster,* 11 Cush. 573. *Young* v

*Austin,* 6 Pick. 280. At most, the defendants were only gratui tous depositaries, permitting the flour to remain at their depot solely for the convenience of the plaintiffs, who were neither consignors nor consignees. The ruling of the court below as to acceptance and the obligation to keep and deliver with ordinary care did not allow its just effect to the receipt, nor to the fact that the practice stated was permitted for the plaintiffs' accommodation. This, coupled with the refusal to limit the ruling as to the care they were bound to exercise, may have led the jury to find for the plaintiffs on evidence as to negligence, on which the defendants should have been exonerated. *Quiggin* v. *Duff,* 1 M. & W. 174. *Lewis* v. *Western Railroad,* 11 Met. 509. *Whitney* v. *Lee,* 8 Met. 91. *Smith* v. *Nashua & Lowell Railroad,* 7 Fost. (N. H.) 86.

*C. S. Lincoln,* for the plaintiffs.

FOSTER, J. The plaintiffs purchased and paid for fifty barrels of flour, and received a bill of sale from Clap & Brother, together with an order by them upon the defendant corporation to deliver that number of barrels. The defendants had at that time in their freight house a larger number belonging to Clap & Brother. The order was presented to the proper clerk of the railroad corporation by the teamster of the plaintiffs, who gave a receipt for fifty barrels, and received in return " a flour check " or order upon the clerk whose business it was to deliver such freight, for the same number in favor of the plaintiffs. This flour check or order was presented to the delivery clerk and left in his possession. Under it, he delivered to the plaintiffs twenty-two barrels of flour and indorsed them on the check or order. All these proceedings were in conformity with the usual course of such business, as recognized and permitted by the officers of the railroad corporation. But the remaining twenty-eight barrels were never in fact received by the plaintiffs, but were by mistake delivered to some unauthorized stranger by the delivery clerk. The facts disclose a sufficient selection and separation of the twenty-eight barrels as the property of the plaintiffs. The vendors ordered their delivery; the corporation by its agents accepted the order and agreed to deliver the flour. It was their

duty to select the barrels to be delivered to the plaintiffs ; and they necessarily made an actual selection and separation of twenty-eight barrels under the order before the misdelivery to the stranger, otherwise they could not have committed the mistake and indorsed the amount wrongly delivered on the plaintiffs' check. These proceedings were quite sufficient to vest in the plaintiffs the title to the twenty-eight barrels now in controversy. Even without the misdelivery, the effect of the vendor's order, when accepted by the parties who had the custody of the whole property, and were to select out of the whole the portion to be delivered, under the circumstances and according to the usual course of business, would have transferred the property in twenty-eight barrels to the plaintiffs, as against the creditors of the vendor, and so as to subject the vendees to the loss in case of fire. *Cushing* v. *Breed, ante,* 376.

The plaintiffs have therefore a property and right of possession sufficient to maintain the present action.

The remaining question is, Are the defendants liable for a conversion of the property ? It is insisted on their behalf that this depends upon the amount of care they were bound to exercise, and the degree of negligence of which they were guilty. But this is an erroneous view of the law. A misdelivery of property by any bailee to a person unauthorized by the true owner is of itself a conversion, rendering the bailee liable in trover, without regard to the question of due care or degree of - negligence. This is a well established legal principle, applicable to every description of bailment. The action of trover is not maintained by proof of negligence, but only of misfeasance amounting to a conversion. And a delivery to an unauthorized person is as much a conversion as would be a sale of the property, or an appropriation of it to the bailee's own use. In such cases neither a sincere and apparently well founded belief that the tortious act was right, nor the exercise of any degree of care, constitutes a defence even to a gratuitous bailee. *Lichtenhein* v. *Boston & Providence Railroad,* 11 Cush. 70. *Polley* v. *Lenox Iron Works,* 2 Allen, 182. *Lawrence* v. *Simons,* 4 Barb. 354. *Esmay* v. *Fanning,* 9 Barb 176. The question whether

the defendants were warehousemen bound to exercise ordinary care, or gratuitous bailees liable only for gross negligence, is therefore wholly immaterial.

Furthermore, when the freight was received into the depot, the railroad corporation became liable as warehousemen. *Norway Plains Co.* v. *Boston & Maine Railroad,* 1 Gray, 263. The point that the owners of the property failed to remove it within a reasonable time does not appear by the exceptions to have been raised at the trial. The mere fact of a sale by the original owners to the plaintiffs would not change the character of the bailment and diminish the responsibility of the warehousemen. The effect of an unreasonable delay by the owner to remove the property upon the liability of a railroad which has freight on hand ready to be delivered might under some circumstances require consideration. But in the present case no such question arises. *Exceptions overruled.*