# HILDEGARDE, INC., v. ANSEL J. WRIGHT AND ANOTHER.[1]

April 29, 1955.

No. 36,443.

*Fred Albert,* for appellant.

*Warner, Ratelle & Hennessy,* for respondents.

---

[1]Reported in 70 N. W. (2d) 257.

CHRISTIANSON, JUSTICE.

This is an action for conversion of restaurant fixtures. Plaintiff appeals from a judgment for defendants entered after answers by the jury to special interrogatories submitted by the trial court in accordance with the special verdict procedure authorized by Rule 49.01 of Rules of Civil Procedure. There was no motion for a new trial.

The defendant J. H. & W. Corporation is a Minnesota corporation which owns business property in St. Louis Park, Minnesota. In all of the events which are important here the J. H. & W. Corporation was represented by defendant Ansel J. Wright, its president and majority stockholder, who operates the Master Addressor Company in the rear portion of the J. H. & W. Corporation's building. In 1950, the J. H. & W. Corporation leased the front portion of its building to Harold Aved and Robert Haskvitz, a partnership doing business under the name of Park Plaza Cafe. The term of the lease was five years from May 1, 1950. The lease was in the standard form, and the lessee had no right to sublet the leased premises without the consent of the lessor.

Prior to the opening of the Park Plaza restaurant, the partnership sublet for $6,500 a part of its restaurant operation to the plaintiff herein, Hildegarde, Inc., a Minnesota corporation whose principal officer and stockholder is Hildegarde Bearman. A written contract was entered into defining the relationship between the partnership and Hildegarde, Inc. The defendant Wright had no knowledge of this agreement between the partnership and Hildegarde, Inc., and was of the opinion that Hildegarde Bearman was merely an employee of the partnership.

Three weeks after the Park Plaza restaurant was opened difficulties developed between the partnership and Hildegarde Bearman, and as a result Hildegarde, Inc., withdrew from active participation in the operation of the restaurant. To secure the repayment of the $6,500 which it had advanced to the partners, Hildegarde, Inc., took a chattel mortgage on the restaurant furniture and equipment, which was thereafter properly recorded. The partnership agreed to retire the mortgage by weekly payments of $100. After making ten

payments, totaling $1,000, the partnership encountered financial difficulties. As a consequence, the restaurant was closed on September 7, 1950, and the partnership later filed a voluntary petition in bankruptcy.

After the Park Plaza restaurant closed, several conferences were held between Mrs. Bearman and Wright and their attorneys. At these conferences Wright first learned that Hildegarde Bearman was a creditor of the partnership. Hildegarde Bearman also informed Wright that she was considering the possibility of taking over operation of the restaurant and that her final decision was contingent upon the results of a survey to determine the economic feasibility of reopening the restaurant and also upon her being able to negotiate a satisfactory lease with Wright.

Mrs. Bearman retained the key to the premises given her by the partnership and entered the premises several times thereafter with Mr. Wright's approval for the purpose of cleaning up the restaurant. No lease was entered into between Mrs. Bearman and Wright, and she paid no consideration for the privilege of access to the premises for cleaning purposes or for having the survey made.

On October 11, 1950, Mrs. Bearman appeared at the premises with a truck and began to remove some of the restaurant fixtures. She was stopped by Wright, who demanded that she furnish some evidence of her ownership of the fixtures before he would permit her to remove them. Mrs. Bearman asserted the existence of documents evidencing her right to the property, but she never exhibited them to Wright. Wright also demanded and received Mrs. Bearman's key to the premises.

Following its general charge, the trial court instructed the jury to return a special verdict and submitted to the jury the following questions:

1. "Did the defendants, on October 11, 1950, convert the property involved from the plaintiff?"

2. "Without regard to your answer to Interrogatory No. 1, but assuming there was a detention of property against plaintiff's interest, was that detention by defendants conditional or qualified?"

3. "If your answer to Interrogatory No. 2 is Yes, were the qualifications, conditions or condition imposed by defendants reasonable and justifiable?"

The fourth question dealt with the value of the property allegedly converted, an issue not raised in the appeal. The jury answered "No" to No. 1 and "Yes" to Nos. 2 and 3.

Plaintiff contends that Wright was guilty of at least a technical conversion of the restaurant fixtures on October 11 when he prevented her from removing the fixtures from the restaurant and that the trial court erred in submitting to the jury the question of whether a conversion had occurred.

To constitute conversion, there must be an exercise of dominion over the goods which is inconsistent with and in repudiation of the owner's right to the goods or some act done which destroys or changes their character or deprives the owner of possession permanently or for an indefinite length of time. Borg & Powers Furniture Co. v. Reiling, 213 Minn. 539, 7 N. W. (2d) 310; Brandenburg v. Northwestern Jobbers Credit Bureau, 128 Minn. 411, 151 N. W. 134, L. R. A. 1915D, 474; Merz v. Croxen, 102 Minn. 69, 112 N. W. 890. It follows that if a bailee's refusal to deliver goods to the rightful owner upon demand does not involve a challenge to the owner's right to those goods, the bailee is not guilty of a conversion. It is perhaps true that in most cases the bailee's simple refusal to deliver upon the owner's demand is of itself an assertion which is inconsistent with the owner's right to possession and therefore a conversion. But where the refusal is qualified, and such qualification upon delivery has a reasonable purpose, the bailee is not a converter since he has not asserted a dominion over the goods which is inconsistent with the owner's right to possession. See, Sutton v. G. N. Ry. Co. 99 Minn. 376, 377, 109 N. W. 815; Prosser, Torts, § 15, pp. 106 to 107; Harper, Law of Torts, § 30, p. 62. Among the conditions with which a bailee may reasonably and legitimately qualify his refusal to deliver goods upon demand is that the owner first prove his title or right to possession. Bradley v. Roe, 282 N. Y. 525, 27 N. E. (2d) 35, 129 A. L. R. 633; Hansen v. Village of Ralston, 145

Neb. 838, 18 N. W. (2d) 213; see, Obodov v. Foster, 105 Colo. 254, 257, 97 P. (2d) 426, 428. Without this power to require the demandant to prove his right to possession, the bailee would indeed be placed in a difficult position, for it is a well-recognized rule that delivery in good faith to a person not entitled to the goods also constitutes a conversion for which the owner can recover against the bailee. Sullivan & O'Brien, Inc. v. Kennedy, 107 Ind. App. 457, 25 N. E. (2d) 267; Baer v. Slater, 261 Mass. 153, 158 N. E. 328, 54 A. L. R. 1328; Hall v. Boston & Worcester R. Corp. 96 Mass. (14 Allen) 439; see, Prosser, Torts, § 15, p. 104; Harper, Law of Torts, § 30, p. 61.

We think the facts fully justified the court in submitting to the jury the questions of whether Wright's refusal to allow Mrs. Bearman to remove the fixtures was qualified, and, if so, whether the qualification annexed to the refusal was reasonable. The fact that Mrs. Bearman's chattel mortgage was recorded and was therefore constructive notice of her interest in the fixtures was merely a factor for the jury to weigh in determining the reasonableness of Wright's qualified refusal to permit her to remove the fixtures. The jury resolved these questions favorably to Wright, and we see no reason for upsetting its determination.

Plaintiff devotes considerable argument to the question of the extent of Mrs. Bearman's interest and Wright's corresponding want of interest in the fixtures. We do not deem it necessary to discuss this point. Even conceding the premises advanced by plaintiff relative to her ownership and right to possession of the fixtures, the jury has found, under appropriate instructions and interrogatories, that Wright's refusal to permit her to remove the fixtures was reasonably qualified and that no conversion occurred.

█ Notwithstanding the fact that the case was tried before a jury and the parties were entitled to a jury trial as a matter of right,[2] plaintiff contends that paragraph three of the court's findings is insufficient to support the judgment. We do not agree. Paragraph three reads:

_____
[2]See, Rule 38.01 of Rules of Civil Procedure.

"That plaintiff's testimony failed to sustain her claim that said property was converted by defendants or either of them on said date."

Plaintiff's objection to this finding is that it does not conform to the requirements of Rule 52.01 of Rules of Civil Procedure since it fuses both fact and law in one finding. The pertinent part of Rule 52.01 reads:

"In all actions tried upon the facts *without a jury or with an advisory jury,* the court shall find the facts specially and state separately its conclusions of law thereon * * *." (Italics supplied.)

It is obvious merely from the wording of the rule itself that it has no application here since the case was not tried by the court alone or by the court with an advisory jury. The special verdict procedure adopted by the trial court in this case is authorized by Rule 49.01 and the jury's determination is binding upon the court to the same extent as a general verdict. 2 Youngquist & Blacik, Minnesota Rules Practice, p. 484. The court's third finding merely expressed the legal conclusion to be drawn from the facts which were specially found by the jury.

Appellant's further assignments of error have been carefully considered but found not to present grounds for reversal.

Judgment affirmed.