Harvey CHRISTENSEN, Petitioner, Appellant,

v.

MILBANK INSURANCE COMPANY, Respondent.

No. C3–01–2078.

Supreme Court of Minnesota.

April 3, 2003.

Robert E. Kuderer, Teresa M. Thompson, Johnson & Condon, P.A., Minneapolis, MN, for Appellant.

John H. Scherer, Rajkowski Hansmeier Ltd., St. Cloud, MN, for Respondent.

## OPINION

ANDERSON, Russell A., Justice.

■ In this case, we are asked to interpret the scope of the initial permission rule which provides that when a named insured initially gives another permission to use a vehicle, subsequent use, short of conversion or theft of the vehicle, remains permissive even though the use is outside the initial grant of permission. We hold, in the context of the "theft or conversion" exception to the initial permission rule, that the intentional dominion or control necessary for "conversion" cannot be shown by accidental destruction of the vehicle in a collision. Further, we hold that "closer to the risk" analysis is inappropriate where a school district's insurance plan states "this agreement provides primary coverage" and the school district employee's personal insurance policy states that its coverage "shall be excess over any other collectible insurance."

From 6 a.m. to 12 noon on Friday, July 1, 1994, appellant Harvey Christensen, a drivers' education instructor, conducted drivers' education instruction with a van owned by Independent School District # 787. After he finished instruction, Christensen drove home to wash the van. Christensen did not have permission to use

the van for personal reasons at any time but did have permission to park the van at his home.

Christensen washed the van in the afternoon after he mowed the lawn and cleaned the house. Over the course of the afternoon, he also drank about six beers. At about 6:30 p.m., as he was finishing supper, Christensen decided to go for a drive. Since the drivers' education van was blocking his car in the driveway, he put a cooler of beer and ice in the van and took the van for a drive. Christensen drank a couple more beers between 6:30 and 8:15 p.m. About 8:30 p.m., Christensen was involved in a collision with a vehicle driven by Veronica Wagner on State Highway 10. He was intoxicated at the time.[1] The van was totally destroyed. Wagner's passengers sued Christensen, District # 787, and others for past and future damages resulting from their injuries.

The van was insured by District # 787 through the Minnesota School Board Association Insurance Trust (MSBAIT), a self-insurance pool specifically authorized by Minnesota Statutes § 471.981, subd. 1 (2002). This plan provides:

**WHO IS COVERED**

1. You are a plan participant for any covered auto.
2. Anyone else is a plan participant while using, with your permission, [any auto you own, hire or borrow except] * * * [none applicable].

The plan also states:

**PURCHASE OF INSURANCE**

1. For any covered auto you own, this agreement provides primary coverage. For any covered auto you

don't own, the coverage provided by this agreement is excess over any purchased collectible insurance.

Christensen's personal auto insurer was Milbank Insurance Company. Milbank's policy provides:

**INSURING AGREEMENT**

A. We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. * * * We will settle or defend, as we consider appropriate, any claim or suit asking for these damages.

* * * *

**OTHER INSURANCE**

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

MSBAIT initially defended Christensen and the school district in the action brought by Wagner's passengers. MSBAIT later tried to tender the defense of the action to Milbank. Milbank rejected the tender on the grounds that Christensen's Milbank policy was excess and that the MSBAIT plan was primary but agreed to act in the capacity of an excess insurer. Ultimately, Christensen settled with payments totaling $78,000. The payments were made pursuant to a loan receipt[2] provided by MSBAIT. The loan receipt was conditioned upon Christensen's

---

1. Christensen was charged with and pled guilty to driving under the influence.

2. Under the loan receipt, Christensen received $115,471.13, representing $78,000 in indemnity payments, $34,471.03 in defense

costs, and fees, from MSBAIT as a loan to fund his defense and indemnify him. The loan was made repayable only in the event and to the extent that Christensen recovered monies from other insurance carriers.

promise that he would seek declaratory relief against Milbank for recovery of damages and attorney fees for the original action as well as for the declaratory proceeding for breach of the duty to defend. Christensen then sought declaratory relief against Milbank for the breach of its duties to defend and indemnify him and for the recovery of attorney fees and costs incurred in the original action and the declaratory judgment action.

Both parties brought motions for summary judgment. The district court granted Christensen's summary judgment motion and ordered judgment against Milbank for the amount of the settlement plus attorney fees and costs in the original action and the declaratory judgment action. In doing so, the district court determined: (1) that Christensen was not a permissive user within the context of the initial permission rule because Christensen's use of the vehicle constituted conversion since he had improperly taken the van, failed to return it, and ultimately destroyed it; and (2) that the Milbank policy should provide primary coverage because Milbank intended to insure Christensen's personal vehicle use and District # 787's plan intended to cover only school use of the vehicle.

The court of appeals, concluding that the district court's definition of conversion was "too broad," held that "[i]n a situation in which the property is destroyed, conversion may be shown only if the destruction was intentional." *Christensen v. Milbank Ins. Co.*, 643 N.W.2d 639, 643 (Minn.App. 2002). The court of appeals applied its definition to the instant facts and determined that Christensen did not convert the van. It therefore concluded that the district court erred in granting summary judgment for Christensen and reversed. Christensen appealed, and this court granted review to consider the scope of the conversion exception to the initial permission rule.

### I.

■ On appeal from summary judgment, our review is de novo; we consider whether there are any genuine issues of material fact and whether either party is entitled to judgment as a matter of law. *Zimmerman v. Safeco Ins. Co. of America*, 605 N.W.2d 727, 729 (Minn.2000); *Washington v. Milbank Ins. Co.*, 562 N.W.2d 801, 804 (Minn.1997); *see also Garrick v. Northland Ins. Co.*, 469 N.W.2d 709, 711 (Minn.1991). In this case there are no genuine issues of material fact, and we consider de novo what constitutes "conversion" under the "conversion or theft" exception to the initial permission rule.

Minnesota law provides that an owner of a motor vehicle may be held vicariously liable for a driver's use of that vehicle if the owner gives the driver express or implied permission. Minn.Stat. § 170.54 (2002). To effectuate this intent, automobile liability insurance policies contain an omnibus clause that creates liability insurance for permissive drivers. 8 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 111.1, at 111–5 to 111–6 (3d ed.1997). Whether and under what circumstances an automobile is considered to be used with the permission of the named insured within the meaning of the omnibus clause is the province of the courts. In construing the scope of coverage created by omnibus clauses, courts have followed one of three rules: (1) the strict or conversion rule; (2) the initial permission rule; or (3) the minor deviation rule. *See* C.T. Drechsler, Annotation, *Automobile Liability Insurance: Permission or Consent to Employee's Use of Car Within the Meaning of Omnibus Coverage Clause*, 5 A.L.R.2d 600, 622 (1949).

In *Milbank Mutual Insurance Co. v. United States Fidelity and Guaranty Co.*, we adopted the initial permission rule. 332 N.W.2d 160, 165 (Minn.1983) (noting that the policy behind Minn.Stat. § 170.54 [the Safety Responsibility Act] is to ensure "persons injured by the negligent operation of automobiles 'an approximate certainty' of an effective recovery" when liability would not otherwise exist) (citation omitted). Under the initial permission rule, when permission to use a vehicle is initially given, subsequent use, short of actual conversion or theft, remains permissive even though the use is not within the contemplation of the parties or is outside the scope of the initial grant of permission. *Id.* at 167; *see also* 6C John Alan Appelman & Jean Appelman, *Insurance Law and Practice* § 4366, at 197, § 4367 (Richard B. Buckley ed. 1979) ("[Some] states have arbitrarily adopted a doctrine [known as the hell or high water rule, or the initial permission rule] that if the vehicle was originally entrusted by the named insured, or one having proper authority to give permission, to the person operating it at the time of the accident, then despite hell or high water, such operation is considered to be within the scope of the permission granted, regardless of how grossly the terms of the original bailment may have been violated."). In *Milbank*, we looked to legislative history and to our trend of interpreting the Safety Responsibility Act and omnibus clauses in liability insurance policies to conclude "that the public policy of this state favors protection of the uncompensated victims of automobile accidents over any interest of an owner-insured or his insurer that he be not subject to liability when his permittee exceeds the scope of the initial permission." 332 N.W.2d at 166–67.

The facts of *Milbank* are analogous to the instant case. In *Milbank*, an employee had permission to take a company truck home. *Id.* at 162. The employer told the employee that he was only to drive the truck home and back to work and was not to go "joyriding." *Id.* Nevertheless, the employee took his wife and son for a drive in the truck and was involved in an accident. *Id.* The employer's insurance company denied coverage claiming the use was nonpermissive. *Id.* We adopted the initial permission rule and held that because of the initial grant of permission, the employee's use was permissive and thus covered by the employer's insurance. *Id.* at 167. We did not define "conversion."

In other contexts, we have defined "conversion" as "an act of willful interference with [the personal property of another], done, without lawful justification, by which any person entitled thereto is deprived of use and possession," *Larson v. Archer–Daniels–Midland Co.*, 226 Minn. 315, 317, 32 N.W.2d 649, 650 (1948), and "the exercise of dominion and control over goods inconsistent with, and in repudiation of, the owner's rights in those goods." *Rudnitski v. Seely,* 452 N.W.2d 664, 668 (Minn.1990); *accord Hildegarde, Inc. v. Wright,* 244 Minn. 410, 413, 70 N.W.2d 257, 259 (1955). Citing *Larson,* Christensen argues that the "intent, knowledge, or motive of the converter is immaterial" and that the court of appeals erred in limiting conversion to intentional destruction of property. 226 Minn. at 317, 32 N.W.2d at 650. Milbank counters that intent should be the key element to conversion in this context because for the initial permission rule to serve its purpose and provide coverage through the vehicle's policy to permissive users, damage or destruction to the vehicle cannot be the determinative factor. We agree with Milbank.

The Restatement defines conversion as "an intentional exercise of dominion or control over the chattel." Restatement

(Second) of Torts § 223 cmt. b (1965). As such, "[m]ere nonfeasance or negligence, without such an intent, is not sufficient for conversion." *Id.* Describing the character of the intent required, the Restatement explains:

> The intention necessary to subject to liability one who deprives another of the possession of his chattel is merely the intention to deal with the chattel so that such dispossession results. It is not necessary that the actor intend to commit what he knows to be a trespass or a conversion. It is, however, necessary that his act be one which he knows to be destructive of any outstanding possessory right, if such there be.

Restatement (Second) of Torts § 222 cmt. c (1965).

■■■ We find the Restatement instructive. A wrongful intent to appropriate chattel for one's own purposes is the essence of the "conversion or theft" exception. To hold that conversion requires an intentional destruction of the vehicle unnecessarily narrows the meaning of "conversion." In the instant case, it is undisputed that Christensen did not intend to wrongfully deprive the school district of its right to use or control its van. *Christensen,* 643 N.W.2d at 644 ("There is no evidence that Christensen's destruction of the vehicle was intentional. To the contrary, all parties seem to agree it was accidental."). In keeping with the purpose of the Safety Responsibility Act, which affords compensation to victims of automobile accidents, we hold that under the "theft or conversion" exception to the initial permission rule, the intentional dominion or control necessary for "conversion" cannot be shown by accidental destruction of the vehicle in a collision, and therefore, because there is no other basis for a finding of the requisite wrongful intent, Christensen did not convert the van.

■■ We are troubled by the dissent's conclusion that Christensen's decision to drink excessively and drive provides the requisite intent for conversion. Under such a rule, an uninsured permittee, who is involved in a one-vehicle accident while driving impaired, would not be covered under the named-insured's policy. This per se rule would preclude recovery for automobile accident victims even if the intoxicated driver was not negligent. *See* Minn.Stat. § 169.96(b) (2002) (providing that violation of a traffic statute is prima facie evidence of negligence, not negligence per se); *Kedrowski v. Czech,* 244 Minn. 111, 118, 69 N.W.2d 337, 342 (1955) (noting that "the mere fact that [the plaintiff] may have been under the influence of alcohol did not in and of itself constitute contributory negligence"); *Kirsebom v. Connelly,* 486 N.W.2d 172, 175 (Minn.App. 1992) (concluding there was sufficient evidence for the trial court to instruct the jury on Minnesota's prohibition on driving under the influence of alcohol and remanding for new trial); *Mueller v. Sigmond,* 486 N.W.2d 841, 843–44 (Minn.App.1992) (determining that blood alcohol concentration evidence is not presumptively relevant in a civil action for damages and holding that the trial court's decision to exclude such evidence was not clearly erroneous); *see also* 4 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Civil,* CIVJIG 26.25 (4th ed.1999); 4A Minn. Dist. Judges Ass'n, Minnesota Practice—Jury Instruction Guides, Civil, CIVJIG 65.25 (4th ed.1999). Furthermore, it seems to us, the dissent's position opens the door to exempting many kinds of negligent conduct—dragracing or driving well in excess of the speed limit come to mind—from coverage. In considering such conduct within the context of the initial permission rule, the Colorado Supreme Court reiterated Colo-

rado's policy "to avoid inadequate compensation to victims of automobile accidents" and concluded that "even 'ludicrous' uses are within the insured's permission as long as they do not constitute theft or conversion." *Raitz v. State Farm Mut. Auto. Ins. Co.*, 960 P.2d 1179, 1183, 1187, n. 15 (Colo.1998) ("Angelopulous * * * did not convert the van when both he and Naranjo rode on its roof.") (citation omitted); *see also Wiglesworth v. Farmers Ins. Exch.*, 917 P.2d 288, 292 (Colo.1996) ("Because the record indicates that the Smiths gave Wiglesworth the keys to their truck and informed him that he could drive the truck to work without asking for further permission, we conclude that Wiglesworth had the initial permission to use the truck [when he participated in a drag race] * * *."). Determining that a decision resulting in negligent behavior constitutes conversion contravenes the express public policy of our state to provide certainty of recovery for those injured in automobile accidents.

## II.

■ Because Christensen did not convert the school district's van, we conclude that District # 787 is vicariously liable for Christensen's negligent use of the vehicle under the initial permission rule. Accordingly, both the MSBAIT and the Milbank policies provide coverage for the accident. In determining whether the MSBAIT policy or Christensen's Milbank policy is primary, the parties disagree whether "closer to the risk" analysis is appropriate. Christensen submits that because "closer to the risk" analysis is appropriate, the district court properly concluded that Milbank intended to provide primary coverage in this situation. Milbank maintains that the express language of the policies, not intent, controls here. "Closer to the risk" analysis, which involves the interpretation of insurance contracts, is a question of law that we review de novo. *Haarstad v. Graff*, 517 N.W.2d 582, 584 (Minn.1994).

■ Generally speaking, insurance contracts, "like other contracts, must be construed according to the terms the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary, and popular sense, so as to give effect to the intention of the parties as it appears from the entire contract." *Bobich v. Oja*, 258 Minn. 287, 294, 104 N.W.2d 19, 24 (1960). However, in determining which policy is primary, courts may look beyond the language of the policies. *Garrick*, 469 N.W.2d at 711–12 (examining the function and insuring intent of the policies instead of the language of "other insurance" clauses); *Interstate Fire & Cas. Co. v. Auto–Owners Ins. Co.*, 433 N.W.2d 82, 85 (Minn.1988) ("In Minnesota, this court does not simply look at the type of 'other insurance' clauses involved. In [*Integrity*] * * * this court explained that the better approach was to 'allocate respective policy coverages in light of the total policy insuring intent, as determined by the primary risks upon which each policy's premiums were based and as determined by the primary function of each policy.'") (quoting *Integrity Mut. Ins. Co. v. State Auto. & Cas. Underwriters Ins. Co.*, 307 Minn. 173, 175, 239 N.W.2d 445, 446 (1976)). However, looking to insuring intent is appropriate only where policies contain conflicting "other insurance" clauses:

> When it is clear that two or more companies are among themselves liable to the insured for his loss but the apportionment among the companies cannot be made without violating the other insurance clause of at least one company, then the courts must look outside the policies for rules of apportionment.

*Integrity,* 307 Minn. at 174–75, 239 N.W.2d at 446, *quoted in Garrick,* 469 N.W.2d at 711–12.

In this case, the MSBAIT policy provides that its coverage is primary for any covered vehicle owned by the school district. The Milbank policy provides that if the insured is involved in an accident while operating a nonowned vehicle, the Milbank coverage is excess to other collectible insurance. Because there is no conflict between the language of the two policies— the MSBAIT policy is clearly primary— analyzing intent is inappropriate.

Accordingly, we conclude that MSBAIT is the primary insurer. As such, Milbank is not required to indemnify Christensen for expenses paid in connection with the settlement of a claim that arose out of the accident.

The decision of the Court of Appeals is affirmed and this decision is remanded to the district court for entry of summary judgment for Milbank.

Affirmed.

HANSON, J., took no part in the consideration or decision of this case.

MEYER, J., took no part in the consideration or decision of this case.

BLATZ, Chief Justice, (concurring in part, dissenting in part).

I concur with the majority opinion that the intentional dominion or control necessary for conversion cannot be shown by accidental destruction of the vehicle involved in the collision. I also agree with the majority holding that "closer to the risk analysis" is inappropriate under the circumstances presented here. I respectfully disagree, however, with the disposition of this case. To conclude that Christensen, who had consumed "about six beers" before taking the van for a drive

and who was convicted of driving under the influence, did not convert the school district's van effectively collapses the "theft or conversion" exception into a theft exception.

In my view, Christensen's decision to drink excessively and drive constitutes conversion: "an act of willful interference with [the personal property of another] done, without lawful justification, by which any person entitled thereto is deprived of use and possession." *Larson v. Archer–Daniels–Midland Co.,* 226 Minn. 315, 317, 32 N.W.2d 649, 650 (1948). It is this choice to drink excessively and use another's property—not the destruction of the property—that constitutes the requisite wrongful intent necessary for conversion. Quoting from the Restatement commentary, the majority recognizes that the actor need not "intend to commit what he knows to be * * * a conversion" and that "[t]he intention necessary to subject to liability one who deprives another of the possession of his chattel is *merely the intention to deal with the chattel so that such disposition results.*" (Emphasis added.)

Nonetheless, after quoting approvingly from the Restatement commentary, the majority immediately states "[a] wrongful intent to appropriate chattel for one's own purposes is the essence of the 'conversion or theft' exception." This is a misstatement of the law, as it redefines conversion to mean theft and effectively eliminates the exception of conversion from the initial permission rule. Such a holding departs from the principles set forth in our prior case law. *See Milbank Mut. Ins. Co. v. United States Fid. & Guaranty Co.,* 332 N.W.2d 160 (Minn.1983). The rule enunciated by the majority makes it difficult— perhaps impossible—to imagine any fact scenario other than theft that would prevent an owner from being vicariously lia-

ble. Therefore, I respectfully dissent and would reverse the court of appeals.

PAGE, Justice, (concurring in part, dissenting in part).

I join in the concurrence and dissent of Chief Justice BLATZ.